Cyber6Agents, Inc.
535 W Second St. STE 209, Lexington, KY 40508

On 6 Oct. 2017 I, Matthew Considine, was contacted by my colleague, Trent Struttmann, about the case Wehner v Breslin. After contacting Wehner's attorney, Chris Roach, I was given the details of the case and told that a report would need to be written and submitted by 31 Oct. 2017. Imaging the 7 IPhones and the computer they were connected to occurred on 23 Oct. 2017, which gave me 8 days to analyze the data collected and prepare a report on my findings.

I gained access to the phones on 23 Oct. 2017 at approximately 09:30 AM. Each iPhone was imaged one at a time by me using my laptop, which had Windows 10 and Cellebrite's UFED Physical Analyzer v6.3.6.19 installed. Each device had to be charged to allow me to image them correctly, and each iPhone turned on without my input once they had sufficient charge. Acquisition was completed at approximately 12:00 PM. (See ImagingSheets.pdf)

I was given access to the desktop computer at the Kenton County Detention Center at approximately 01:45 PM on 23 Oct. 2017, in Room 124. After detaching the hard drive from the computer, I noted the make/model of the hard drive and the serial number. Using the Logicube Forensic Falcon, I set up the source hard drive and the target hard drive for forensic acquisition. The acquisition finished shortly before 05:00 PM. (See ImagingSheets.pdf)

While imaging the iPhones, I became aware of several issues with retrieving the data. I was told that some of the iPhones had been reset to factory settings sometime between the incident on 26 Nov. 2015 and when I imaged them, so it was unlikely that any relevant data would be retained on those devices. I was also told that the County was unaware which phones were reset, so to be thorough, I attempted to image all of them. One phone would not hold a charge in its battery, so I could not collect data from it. Another phone had a broken power button, so I could not use my forensic equipment to collect the data. As a result, I was only able to collect data from 5 of the 7 iPhones. (See ImagingSheets.pdf)

During my examination of the iPhones, I took note of which ones were factory reset and the dates and times of their factory reset. Out of the five phones that I could collect, four of them had been through a factory reset. Two of them had been factory reset before the incident, in 2013 and 2014. The other two had been factory reset on 19 July 2017, several months after the incident. However, some of the phones that had been reset were turned on and active on 19 July 2017. They were pulling GPS location data, which indicated they were turned on in the vicinity of Court Street in Covington, KY. All the phones I pulled data from had been turned on at some point on 19 July 2017. None of the phones I examined had user-created videos from 26 Nov. 2015. (See iPhone Reports)

My examination of the computer hard drive required the use of the software tool EnCase. Using EnCase 8, I opened the forensic image and began searching the file system for possible copies of videos of the altercation with Wehner. This involved using the sort feature within the tool and locating relevant date/times and file types/names.

The computer was imaged on-site at the Kenton County Detention Center on 23 Oct. 2017. This was the computer that I was told contained copies of the videos of employees restraining inmates. I examined the computer for evidence of the video recording by an employee showing the restraint used on Kathy Wehner on 26 Nov. 2015. In my review, I found a copy of the security footage of the incident in "blandrum" user's Desktop files. These files were created on 2 Nov. 2016, nearly a year after the incident occurred. (See blandrum-FileListing.csv)

I had also found a copy of more security footage in the "chuckh" user's Desktop files. This folder was created on 9 Dec. 2015, 13 days after the incident occurred. The data in this folder was last accessed by a user on 12 April 2017. From review of the surveillance video of Wehner's restraint in a chair, at least

Phone: 859.523.9081 Fax: 859.275.1242

CyberAgents, Inc.
535 W Second St. STE 209, Lexington, KY 40508

one employee appeared to be recording the restraint process on a mobile device. (See chuckh-FileListing.csv)

Out of 28 total created user domains, 15 of them had connected an iOS device (See iOS_Devices-FileListing.txt). Each user had multiple video and image files that were copied from an iOS device, as well as several other models of recording devices. Based on the USB connection records: five iPhone 5's or 6's, four iPhone 4S's, and two iPhone 4's were connected to the computer I examined. There were also records of LG, Samsung, and HTC Android devices connected to this computer, which contain hardware capable of taking visual recordings. (See PortableDevices.csv)

After reviewing the transcripts of Landrum, I tested his theory that no video was recorded because the storage was full, and no notification was given to him that the storage was full. I acquired an iPhone 5S and began recording videos of different length to start filling up storage space. After several hours of recording, a notification appeared that there was no more storage space left on the iPhone. The user then has the option to dismiss the notification or open up the storage usage display in the Settings application. The video being recorded at the time was retained, but video recording did not continue after the appearance of the notification. If the user dismisses the notification, it will reappear when the user opens the Camera application again. Once that notification appears, the user cannot use the Camera application as intended until storage space is freed up on the phone. The user is given one of two options: to delete data on the phone to free up more storage space, or to not delete any data and not be able to use the Camera application. Based on these facts, it is my professional opinion that one of three scenarios occurred:

1. The iPhone's storage was full, and a notification appeared to alert Mr. Landrum to free up storage space on the phone to initialize a recording.
2. While Mr. Landrum was recording, the iPhone's storage became full, at which point he would have received a notification and the video recorded before the notification would have been saved.
3. There was enough free storage space on the phone for Mr. Landrum to complete the video, which would be saved to the phone upon completion of the recording.

Based on these three scenarios and Mr. Landrum's testimony, there would have been a saved video of the incident on the phone which he could have copied to the computer.

The above information is true to the best of my knowledge, and, being of age and clear of mind, I do hereby claim this as my report on the devices I was allowed to forensically image in the case of Wehner v Breslin.

Matthew Ryan Considine
31 Oct. 2017

Phone: 859.523.9081 Fax: 859.275.1242